**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ANA YESENIA MANCIA,<br><br>    Plaintiff,<br><br>        v.<br><br>ALEJANDRO MAYORKAS, SECRETARY, DEPARTMENT OF HOMELAND SECURITY; TRACY RENAUD, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and DENISE M. FRAZIER, DISTRICT DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES ATLANTA DISTRICT OFFICE,<br><br>    Defendants. | Civil Action No.<br>1:20-cv-01492-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. [ECF 17]. After careful consideration of the parties' briefing, and with the benefit of oral argument, the Court **DENIES** Defendants' motion.

**I.      BACKGROUND**

For purposes of this Order, the Court treats relevant facts as undisputed. Around 1991, Plaintiff Ana Yesenia Mancia entered the United States without

inspection and was subsequently placed in removal proceedings.[1] On February 29, 2000, an Immigration Judge in Atlanta granted Mancia voluntary departure in lieu of deportation, requiring that she depart the United States by June 28, 2000.[2] Mancia did not voluntarily depart the United States by that date, which converted the Immigration Judge's order into an order of deportation.[3] Mancia later obtained Temporary Protected Status (TPS), which to the best of the Court's knowledge, remains in place as of the date of this Order.[4] On June 25, 2019, U.S. Citizenship and Immigration Services (USCIS) granted Mancia's application for advance parole based on her TPS.[5] Mancia departed the United States and returned on July 14, 2019.[6]

After she returned to the United States, on October 3, Mancia filed a Form I-485 application with USCIS requesting an adjustment of status to lawful

---

[1]   ECF 1, ¶ 11.

[2]   *Id*. *See also* ECF 1-1.

[3]   ECF 1, ¶ 11.

[4]   *Id*. ¶ 12; ECF 1-2, at 2. Although the TPS was set to expire on September 9, 2019, at oral argument counsel for Defendants indicated that Plaintiff remains on temporary protected status.

[5]   ECF 1, ¶¶ 12–13; ECF 1-3, at 1.

[6]   ECF 1, ¶ 13; ECF 1-3, at 2–3.

permanent resident.[7] On March 5, USCIS denied Mancia's Form I-485 application, stating: "Since you are a respondent in a removal proceeding, and you are not an 'arriving alien', only EOIR has jurisdiction to grant or deny your Form I-485 based on the merits . . . [therefore,] your Form I-485 is denied based on lack of USCIS jurisdiction."[8]

Mancia filed her Complaint on April 8, 2020, seeking a writ of mandamus and declaratory judgment that USCIS had exclusive jurisdiction to review her I-485 application under 8 C.F.R. § 1245.2(a)(1) because she is an "arriving alien."[9] Defendants moved to dismiss Mancia's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that: (1) the Court lacks jurisdiction under 8 U.S.C. § 1252 because Mancia is effectively challenging the order for her removal, and (2) as to the merits, USCIS does not have jurisdiction to review Mancia's application for adjustment of status because she is not an arriving alien.[10] Mancia filed her response in opposition on August 26, 2020,[11] and Defendants filed

---

[7]   ECF 1, ¶ 14.

[8]   ECF 1, ¶ 15; ECF 1-5.

[9]   ECF 1.

[10]   ECF 17.

[11]   ECF 21.

a reply in support of their motion on September 30, 2020.[12] Mancia and Defendants

have subsequently filed notices of supplemental authority.[13]

## II.   LEGAL STANDARD

### A.   Factual Attack on Subject Matter Jurisdiction

For their 12(b)(1) motion, Defendants assert they are making a "factual

attack."[14] In other words, Defendants are challenging the fact of subject matter

jurisdiction, not merely the allegation on the face of the Complaint that the Court

has subject matter jurisdiction.

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack

of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v.

Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). The Eleventh

Circuit has described the difference between the two types of challenges:

> A facial attack on the complaint requires the court merely
> to look and see if the plaintiff has sufficiently alleged a
> basis of subject matter jurisdiction, and the allegations in
> his complaint are taken as true for the purposes of the
> motion. By contrast, a factual attack on a complaint
> challenges the existence of subject matter jurisdiction
> using material extrinsic from the pleadings, such as
> affidavits or testimony.

---

[12]   ECF 26.

[13]   ECF 32; ECF 35; ECF 36.

[14]   ECF 17, at 4.

*Id.* at 1232–33 (internal quotation marks omitted) (citations omitted). Put another way, a factual attack is a jurisdictional challenge based on extrinsic evidence. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) ("Appellees' motion to dismiss was a factual attack because it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings.").

A facial attack is subject to the familiar maxim that a complaint's well-pled allegations be accepted as true. *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a factual attack, the Court "may weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).

## B.     Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n*, 605 F. 3d at 1289 (quoting *Twombly*, 550 U.S. at 570).

A complaint is facially plausible when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The Court is not bound, however, to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79.

III.   **DISCUSSION**

A.   **Legal Backdrop**

An understanding of the regulatory scheme governing applications for adjustment of status is essential to understanding Mancia's claims. The central issue for the Court is whether Mancia is an "arriving alien" under 8 C.F.R. § 1245.2(a). This regulation dictates which agency has the jurisdiction to review an alien's application for adjustment of status; that is an adjustment from non-permanent or unlawfully present to permanent legal resident. The regulation states:

> (i) In General. In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.
>
> (ii) Arriving Aliens. In the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien unless:
>
> > (A) The alien properly filed the application for adjustment of status with USCIS while the arriving alien was in the United States;
> >
> > (B) The alien departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue the previously filed application for adjustment of status;

> (C) The application for adjustment of status was denied by USCIS; and
>
> (D) DHS placed the arriving alien in removal proceedings either upon the arriving alien's return to the United States pursuant to the grant of advance parole or after USCIS denied the application.

8 C.F.R. § 1245.2(a).

This scheme sets up a dichotomy by which arriving aliens, apart from those who fall within the limited exceptions, must apply for adjustment of status with USCIS and non-arriving aliens placed in a removal proceeding must apply to the Immigration Judge presiding over the removal proceeding.[15] An arriving alien is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry. . . . An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such

---

[15] The phrase "placed in a removal proceeding" is not at issue here because the parties dispute the term "arriving alien," which is dispositive. The Court is, however, unconvinced that being "subject to an order of removal" is the same as being "placed in a removal proceeding" because the latter contemplates an active proceeding. Plaintiff's proceeding concluded and resulted in an order of removal. Moreover, "the Immigration Judge" seems to refer to the judge presiding over an active proceeding, whereas, here, Plaintiff would have to request a *sua sponte* reopening of her removal case rather than present her application in an ongoing proceeding.

parole is terminated or revoked." 8 C.F.R. § 1001.1(q). Significantly, once an alien is admitted, she is no longer an "arriving alien"; however, an alien who is paroled into the United States is not considered admitted—8 U.S.C. § 1101(13)(B)—which includes aliens granted advance parole. *See Assa'ad v. U.S. Atty. Gen.*, 332 F.3d 1321, 1338 (11th Cir. 2003) ("The term 'parole' has a well-established meaning: that the alien is allowed into the country but remains constructively at the border, seeking admission and subject to exclusion proceedings.") Thus, for purposes of applications for adjustment of status, "[t]he term 'arriving alien' includes (1) aliens paroled, but not admitted, into the United States and (2) inadmissible aliens charged with removal under § 1182." *Perez v. USCIS*, 774 F.3d 960, 966 (11th Cir. 2014).

A related issue, but distinct from the jurisdictional question, is whether an alien is legally qualified for an adjustment of status under 8 U.S.C. § 1255. Per the statute, an alien may apply for adjustment of status if she "was inspected and admitted or paroled into the United States." *Id.* § 1255(a). Arriving aliens paroled into the United States fall into this category, though USCIS recently adopted a decision carving out an exception to eligibility for aliens with temporary protected status who are granted advance parole. USCIS Policy Mem., *Matter of Z-R-Z-C-, Adopted Decision 2020-02*, PM-602-0179 (Aug. 20, 2020) (hereinafter "*Matter of Z-R-*

Z-C"). However, whether Mancia satisfies this element of being "inspected and admitted or paroled" for purposes of adjustment of status eligibility is not before the Court. Nor could it be; as discussed below, this eligibility determination is discretionary and review of it would be beyond this Court's jurisdiction. *Patel v. United States Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020).

Finally, Mancia's temporary protected status is implicated here.

> TPS status may be granted when the Secretary of the Department of Homeland Security determines that certain conditions exist in a country, including the occurrence of an environmental disaster, that results 'in a substantial, but temporary, disruption of living conditions in the area affected,' and designates that foreign state for inclusion in the TPS program. . . . A national of a country that has been designated for inclusion in the TPS program may be granted such status by USCIS in the discretion of the Secretary, if he meets the statutory eligibility criteria for TPS and is not otherwise ineligible. An alien who has been granted TPS is eligible to remain legally in the United States during the designated period and cannot be removed from the United States nor placed into immigration detention during the period in which his TPS remains current.

*Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1140 (11th Cir. 2009) (cleaned up); 8 U.S.C. § 1254a(a)(1)(A). A TPS recipient may apply for permission to travel abroad—8 U.S.C.A. § 1254a(f)(3)—and does so by requesting a Form I-512, referred to as "An Authorization for Parole of an Alien into the United States," which is the form issued any alien seeking advanced parole.

**B.      The Jurisdiction Stripping Provisions of 8 U.S.C. § 1252**

As a threshold matter, the Court must determine whether it has been stripped of jurisdiction. Relevant here, 8 U.S.C. §§ 1252(a)(5) and (b)(9) prohibit district courts from granting relief in actions challenging final orders of removal. Similarly, 8 U.S.C. § 1252(a)(2)(B) prohibits district courts from reviewing discretionary judgments made under the Immigration and Nationality Act (INA). Defendants contend that Mancia challenges her final order of removal because USCIS denied her Form I-485 application on the basis that she is "a respondent in a removal proceeding."[16] Further, according to Defendants, if Mancia succeeds, the practical effect would be voiding her removal order because USCIS is not permitted to review adjustment applications of those in removal proceedings.[17] The Court disagrees with Defendants' interpretation of 8 U.S.C. §§ 1252(a)(5) and (b)(9) and finds that it is not precluded from reviewing Mancia's claims under 8 U.S.C. § 1251(a)(2)(B).

Regarding 8 U.S.C. §§ 1252(a)(5) and (b)(9), Eleventh Circuit and Supreme Court precedent caution against the broad interpretation advocated by Defendants. The Supreme Court recently held that § 1252(b)(9) "does not present

---

16   ECF 1, ¶ 15; ECF 1-5.

17   ECF 17, at 16.

a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (internal citation and punctuation omitted); *see also Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). In *Canal A Media*, the Eleventh Circuit held that § 1252(b)(9) did not preclude review of a USCIS denial of a visa, reversing the district court's decision that the denial was "inextricably linked to any removal order" and finding the section "is not intended to cut off claims that have a tangential relationship with pending removal proceedings." *Id.* (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) ("[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9).")).

Mancia's claim is tangential to her removal order. Mancia is not challenging the removal order at all, even in the application at issue. Rather, she argues that USCIS is the proper authority to review her application for status adjustment to lawful resident because she is an arriving alien.[18] To hold that a challenge to any decision impacting the United States' ability to remove an alien is one that

---

[18]   ECF 1-5.

"challenges a final order of removal" would set a boundless standard. The Court rejects such an interpretation.

Judicial review of discretionary judgments made by the Attorney General or Secretary of State under the INA, apart from constitutional questions or questions of law that may be reviewed by the appropriate court of appeals, is also precluded under 8 U.S.C. § 1252(a)(2)(B). The statute specifically classifies "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of [Title 8]" as discretionary and non-reviewable. 8 U.S.C. § 1252(a)(2)(B)(i). The Eleventh Circuit recently clarified that "[t]he statute means what it says," and held that "any judgment" includes decisions "pertaining to statutory eligibility for discretionary relief," which were previously considered non-discretionary and subject to judicial review.[19] *Patel v. United States Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020).

Although Mancia claims she is eligible for adjustment of status under 8 U.S.C. § 1255(a), she is not asking the Court to review USCIS's determination of her eligibility for status adjustment. Mancia instead seeks review of whether

---

[19] Prior to *Patel*, a challenge to a USCIS decision regarding statutory eligibility would have been considered non-discretionary and subject to judicial review. *See Mejia Rodriguez*, 562 F.3d at 1144 (recognizing that USCIS determination of eligibility of adjustment of status does not implicate agency discretion).

USCIS properly applied the jurisdictional provisions of 8 C.F.R. § 1245.2 in declining to review her application at all. That is not a statutorily designated discretionary act. The Court, therefore, has not been stripped of jurisdiction to adjudicate Mancia's claims under either 8 U.S.C. §§ 1252(a)(5), (b)(9), or (a)(2)(B).[20]

### C.   Administrative Procedure Act Finality

Mancia asserts her claims under the Administrative Procedure Act (APA), which provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C.A. § 704. Two conditions must be satisfied for an agency action to be considered final. "First, the action must

---

[20]   In their supplemental notice of authority filed after oral argument, Defendants for the first time contend that 8 U.S.C. § 1252(g) strips this Court of jurisdiction because it provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." ECF 35, at 2. The Court does not interpret Section 1252(g) to preclude review of USCIS's denial of an application on jurisdictional grounds. *See Canal A Media*, 964 F.3d at 1257 (finding that USCIS decision to deny visa petition was not a "decision to 'commence proceedings' much less to 'adjudicate' a case or 'execute' a removal order" under § 1252(g)). *See also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that [§ 1252(g)'s] mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."); *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1202 (11th Cir. 2016) (recognizing that § 1252(g) is construed narrowly to include discrete acts related to deportation and not "a variety of other actions that may be taken before, during, and after removal proceedings").

mark the consummation of the agency's decision-making process— it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and quotations omitted); *Mejia Rodriguez*, 562 F.3d at 1145 (quoting the same). "The 'core question' about finality 'is whether the agency has completed its decision[-]making process, and whether the result of that process is one that will directly affect the parties.'" *Canal A Media*, 964 F.3d at 1255 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

Under this standard, "judicial review is not available until 'an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule.'" *Ibarra v. Swacina*, 628 F.3d 1269, 1269 (11th Cir. 2010) (quoting *Darby v. Cisneros*, 509 U.S. 137, 146 (1993)). If Mancia can renew her application in an ongoing removal proceeding in front of an Immigration Judge, she has another avenue for administrative relief and, therefore, has not exhausted her administrative remedies. However, if Mancia is an "arriving alien" under 8 C.F.R. § 1245.2(a), only USCIS has jurisdiction to review her applications for adjustments of status. This means an Immigration Judge would not have jurisdiction to reopen Mancia's removal proceeding if she is indeed an arriving alien and the USCIS

decision is final. *See Canal A Media*, 964 F.3d at 1256 (USCIS decision was final agency decision because Immigration Judges have no jurisdiction over I-129 applications); *Ibarra*, 628 F.3d at 1269 (11th Cir. 2010) ("[A]n adjustment of status decision is final where there are no deportation proceedings pending in which the decision might be reopened or challenged.") (internal citations and punctuation omitted). As explained below, Mancia is an arriving alien, meaning an Immigration Judge has no jurisdiction over her application for adjustment of status and, therefore, USCIS's decision was a final decision under the APA.

### D. Mancia Is an "Arriving Alien" Whose Application for Adjustment of Status Must Be Reviewed by USCIS.

Under the APA, a court reviews an agency conclusion to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A). "That standard 'provides the reviewing court with very limited discretion to reverse an agency decision,' and is 'exceedingly deferential.'" *Mathews v. USCIS*, 458 F. App'x 831, 833 (11th Cir. 2012) (internal citations omitted) (quoting *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009); *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996)).

At issue here is whether Mancia's temporary protected status prevents her from being considered an arriving alien when she returned to the United States pursuant to her advance parole. In all other circumstances, apart from expedited

removal proceedings,[21] aliens entering the United States pursuant to a grant of advance parole are considered arriving aliens. *See Perez v. USCIS*, 774 F.3d 960, 966 (11th Cir. 2014) ("The term 'arriving alien' includes [ ] aliens paroled, but not admitted, into the United States."). *See also Ibragimov v. Gonzales*, 476 F.3d 125, 132 (2d Cir. 2007) ("As explained below, INS regulations manifest the agency's clear intent to treat parolees, including advance parolees, as 'arriving aliens' subject to a determination of inadmissibility" and, in particular, as applicants for admission); *Zheng v. Gonzales*, 422 F.3d 98, 111 (3d Cir. 2005) (finding the term arriving alien "encompasses not only aliens who are actually at the border, but also aliens who were paroled after their arrival. It is therefore clear that [the plaintiff] is an 'arriving alien.' He arrived in the United States without inspection, but then left pursuant to an advance parole. Because he re-entered with no legal status greater than that of a parolee, he is simply a paroled arriving alien"*); Diarra v. Gonzales*, 137 F. App'x 627, 630 (5th Cir. 2005) (alien paroled into the United States pursuant to grant of advance parole via an I-512 form was an "arriving alien" and therefore

---

[21] The statutory scheme explicitly provides that an arriving alien paroled pursuant to a grant of advance parole "will not be treated, solely by reason of that grant of parole, as an arriving alien under section 235(b)(1)(A)(i) of the Act." 8 C.F.R. § 1001.1(q). Thus, an alien who obtains advanced parole may not be subject to expedited removal provisions of section 235(b)(1)(A)(i).

could not resume adjustment of status application); *Rais v. Holder*, 768 F.3d 453, 457 n.4 (6th Cir. 2014) (recognizing that USCIS had exclusive jurisdiction over immigration status of alien who "had last entered the United States on advance parole"); *Shahwan v. Chertoff*, No. C-05-4218MMC, 2007 WL 627921, at *1 (N.D. Cal. Feb. 26, 2007) ("When an alien travels on advance parole, the alien becomes an 'arriving alien' upon return to the United States.").

Nothing in the statutes or regulations governing TPS differentiates the advance parole granted to TPS recipients from the advance parole granted to other aliens. The mechanism by which a TPS recipient seeks permission to travel refers to the same "advance parole" provisions and the documentation issued to the TPS recipient—the I-512 form—is the same that is issued to other aliens granted advance parole. 8 C.F.R. § 244.15 ("Permission to travel may be granted by the director pursuant to the Service's advance parole provisions.").

Defendants' position is that, because a TPS recipient granted advance parole returns with "the same immigration status the alien had at the time of departure,"[22] Mancia returned as "an alien present in the United States without inspection and admission or parole, subject to an order of removal, who had been

---

[22]   ECF 17, at 9.

granted TPS."[23] Yet, as Mancia rightly points out, being present without inspection and admission or parole is not a status at all. "Admission and status are fundamentally distinct concepts. Admission is an occurrence, defined in wholly factual and procedural terms. . . . Status, by contrast, usually describes the type of permission to be present in the United States that an individual has." *Gomez v. Lynch*, 831 F.3d 652, 658 (5th Cir. 2016). Thus, "there is no status of 'present without admission.'" *Id.* Mancia returned to the United States with a temporary protected status or, in other words, that of a lawful nonimmigrant. 8 U.S.C. § 1254a(f)(4) ("[F]or purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien [with TPS] shall be considered as being in, and maintaining, lawful status as a nonimmigrant.").

USCIS recently adopted an Administrative Appeals Office decision finding that an alien with TPS who traveled abroad pursuant to a grant of advance parole was not statutorily eligible for status adjustment as an alien paroled into the United States because Congress could not have intended that result. *Matter of Z-R-Z-C*, PM-602-0179. The adopted decision concluded that, "notwithstanding the advance parole designation reflected on the travel document" or the issuance of

---

[23]   *Id.* at 13.

MTINA-related[24] travel documents "pursuant to the Service's advance parole provisions," "advance parole" for TPS recipients means something different from the normal "advance parole." *Id.* at 10. According to USCIS, this must be because "TPS travel authorization pursuant to section 244(f)(3) of the Act and section 304(c) of MTINA cannot be construed to circumvent Congress' intent that TPS not provide a direct path to lawful permanent residence." *Id.* Nevertheless, the AAO recognized that an alternative statutory construction was reasonable and, therefore, that the opinion stated would not be retroactive. Mancia cited this adopted opinion in her second notice of supplemental authority.[25] Defendants argue in their response that the adopted opinion is of limited value because it deals with statutory eligibility, not jurisdiction.[26]

Whether the definition of arriving aliens under 8 C.F.R. § 1001.1(q) includes aliens with TPS who are granted advance parole, and whether this gives USCIS jurisdiction to review those aliens' applications for adjustment of status under 8 C.F.R. § 1245.2, are matters of regulatory construction.

---

[24] "MTINA" stands for the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991.

[25] ECF 35-1.

[26] ECF 36.

> When we construe regulations, we begin with the language of the regulation, just as we do for statutes. We evaluate whether the plain language of the regulation unambiguously answers the question at issue when we consider the regulatory language itself, the particular context in which that language appears, and the broader context and purpose of the regulatory scheme as a whole. If our review of the regulatory language unambiguously answers the question at issue, that is the end of the matter, and we do not consider how the administering agency construes the regulation.

*Landau v. RoundPoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1369–70 (11th Cir. 2019).

The Court finds that the regulations are unambiguous because, pursuant to plain language of the regulations and the interaction between them, *id.,* an alien traveling pursuant to a grant of advance parole becomes an arriving alien upon her return. 8 C.F.R. § 1245.2(a)(1) provides that USCIS shall have exclusive jurisdiction over an arriving alien's application for adjustment of status, provided that the alien does not fall within one of the specific exceptions. 8 C.F.R. § 1001.1(q) defines an arriving alien as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." An alien remains an applicant for admission, and therefore an arriving alien, if she is paroled into the United States. *Id.* An alien returning to the United States pursuant to a grant of advance parole fits within this definition—*Diarra*, 137 F. App'x at 630 (alien returning to the United States with advance parole via an I-512 form was an "arriving alien")—and

aliens with TPS who seek permission to travel can do so through the advance parole mechanisms. 8 C.F.R. § 244.15. Thus, by virtue of her advance parole, Mancia is an arriving alien and USCIS has exclusive jurisdiction over her application for adjustment of status.

Aliens seeking legal immigration status in the United States are required to navigate a maze of statutes, regulations, and interpretations. In doing so, Mancia has found a path by which she can have her application of adjustment of status reviewed by USCIS. It is neither illegal nor improper for her to do so. Defendants' strongest argument is the policy position that aliens with temporary protected status, who travel pursuant to a grant of advance parole, should not be put in a better position than if they had not left in the first place. That makes good sense. But the Court's role is to interpret the statutes and regulations in the way they are written. The Court "will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000). "Advance parole" means "advance parole." If Congress or the Immigration and Naturalization Service intended TPS recipients to be excluded from the plain meaning of advance parole, they could have (and perhaps should have) said so. And maybe they will. But under the law as currently written, Mancia is an arriving

alien and USCIS has exclusive jurisdiction over her application for adjustment of status. For this reason, Mancia's Complaint states a claim upon which relief can be granted.

## IV.   CONCLUSION

The Court **DENIES** Defendants' motion to dismiss.

**SO ORDERED** this the 30th day of March 2021.

Steven D. Grimberg
United States District Court Judge